1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LANTZ RETIREMENT INVESTMENTS,            No.  1:19-cv-00379-NONE-SAB
     LLC, et al.,
12
13                Plaintiffs,
                                              ORDER GRANTING MOTIONS TO
14        v.                                  DISMISS

15   BRIAN GLOVER, et al.,                    (Doc. Nos. 51, 55, 57, 67)

16                Defendants.

17

18        This matter is before the court on a second set of motions to dismiss plaintiffs'[1] first

19   _____

20   [1]  Plaintiffs' first amended complaint (Doc. No. 44), identifies the plaintiffs in this action as Lantz
     Retirement Investments, LLC, a California Limited Liability Company; Arthur and Annette L.
21   Davis, as Trustees of the Davis Family Trust dated May 27, 1994; Anthony E. Hogg, as Trustee
     of the Anthony and Stacy L. Hogg Family Trust dated November 18, 2005; Fred Porter, as
22   Trustee of the Profit Sharing Plan Trust 2; BRRI Investments, a California Limited Liability
     Company; Michael and Jennifer Duncan, as Trustees of the M and J Duncan Family Trust; Bart
23   A. Wallace, as Trustee of the Entrust Group FBO Bart Alan Wallace IRA# 50-01668; Stanley R.
     Hughes, as Trustee of the Entrust Group FBO Stanley Richard Hughes IRA# 50-0106666; Anita
24   B. Hashim and Annette Davis, as Trustees Hashim Family Trust dated March 28, 1990; Milo
     Eugene Watson and Patricia A. Watson, as Trustees of the Watson Living Trust dated April 11,
25   2001; Brent Cruz, as Trustee of the Brent Cruz and Misty Cruz Family Trust of 2010; Brent Cruz,
     as Trustee of the Entrust Group FBO Brent Cruz IRA# 72-30012530; Misty Cruz, as Trustee of
26   the Entrust Group FBO Misty Cruz IRA # 72-30012531; James A. Bock, as Trustee of the James
     and Brenda Bock Family Trust dated September 14, 2017; David K. Bodke, as Trustee of the
27   DKB 401K Trust; Bebebo, LLC, a California Limited Liability Company; George R. Smith Jr., as
     Trustee of the Entrust Group FBO George R. Smith Jr. IRA # 50-10667; Verdi S. Boyer, as
28
                                              1

amended complaint ("FAC").  (Doc. No. 44.)  The motions encompass four separate filings by defendants[2] and largely seek dismissal based on alleged pleading deficiencies, including an asserted failure to meet certain heightened standards for fraud claims, such as Federal Rule of Civil Procedure 9(b).  (Doc. Nos. 51, 55, 57, 67.)  The matters were taken under submission on the papers pursuant to Local Rule 230(g).  The court has considered the parties' briefs, and for the reasons set forth below, will grant in part and deny in part defendants' motions to dismiss.[3]

**BACKGROUND**

On December 5, 2014, plaintiffs received an email from defendant Robert Smith inviting them to hear some "exciting news about current and upcoming assisted living and memory care projects" for private investment.  (Doc. No. 44 at ¶¶ 37.)  On December 16, 2014, plaintiffs gathered at a restaurant in Bakersfield, California for a dinner meeting, during which defendants Smith and Brian Glover presented an investment based in Mesa, Arizona.  (*Id*. at ¶¶ 28, 38.)  Plaintiffs contend that defendants Smith and Glover touted defendants Gregory Roderick and Frontier Management, LLC ("Frontier"), as the "premier assisted living and memory care facility

---

Trustee of the John David Fritch Irrevocable Trust dated November 11, 2015 one-third (1/3) of Assignor's interest; Verdi S. Boyer, as Trustee of the Mark Joel Fritch Irrevocable Trust dated November 11, 2015 one-third (1/3) of Assignor's interest; Verdi S. Boyer, as Trustee of the Jillian Laura Fritch-Stump Irrevocable Trust dated November 11, 2015 one-third (1/3) of Assignor's interest; and Richard A. Owens, Sr., as Trustee of the Richard A. Owens, Sr. and Minda Owens Revocable Trust.

[2]  Plaintiffs' first amended complaint (Doc. No. 44), identifies the defendants as Brian Glover, an individual; Mesa Senior Living Community, LLC/Courtyard Towers, Mesa Arizona, an Oregon Limited Liability Company; Gregory Roderick, an individual; the Roderick Family LLC, a California Limited Liability Company; BIDE, LLC, a California Limited Liability Company; Mark Smith, an individual; Frontier Management, an Oregon Limited Liability Company; Newmark Grubb ASU & Associates, a California Corporation; and Does 1-50, inclusive.

[3]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion.  That situation, which continued unabated for over twenty-two months but has now been partially addressed by the U.S. Senate's confirmation of a new district judge for this court on  December 17, 2021, left the undersigned presiding over 1,300 civil cases and criminal matters involving 735 defendants at last count.  Unfortunately, that situation sometimes results in the court not being able to issue orders in submitted civil matters within an acceptable period of time.  This situation has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

manager and operator, respectively." (*Id*. at ¶ 38.)  Their strategy was primarily to attempt to reduce management costs, increase rental values, and reduce the number of Medicaid units and replace them with private pay residents. (*Id*. at ¶ 40.)  As part of the investment presentation, defendants proposed potentially selling the target assisted living facility after two to three years, with the goal of earning a profit from the sale. (*Id*. at ¶¶ 39–40.)

Plaintiffs allege they were induced to invest by representations made during the meeting and in later communications. (*See, e.g.,* Doc. No. 44 at ¶¶ 97-107.)  For example, plaintiffs contend they were told that in past projects defendant Roderick had bought out investors who became dissatisfied and wanted to leave. (Doc. No. 44 at ¶ 38.)  As another example, plaintiffs assert that defendants represented that plaintiffs would receive 10-12% monthly revenue distributions. (*Id*. at ¶ 40.)  And while plaintiffs did receive distributions for a period of time, plaintiffs allege that eventually defendants stopped disbursing monies. (*Id*. at ¶ 102(f).)

Over the next five months, from January 2015 through May 2015, plaintiffs and others who chose to invest received numerous communications containing information about the acquisition of the Mesa assisted-living facility. (Doc. No. 44 at ¶¶ 40-56.)  On March 3, 2015, defendant Smith sent a partially executed operating agreement to plaintiffs. (*Id*. at ¶ 48.)  On March 17, 2015, defendant Smith sent a first amended operating agreement to plaintiffs, and on April 21, 2015, a fully executed copy of the first amended operating agreement was sent to plaintiffs by defendant Smith. (*Id*. at ¶¶ 52, 55.)

The Mesa investment proceeded for a short period of time before problems began to appear, according to plaintiffs. (Doc. No. 44 at ¶¶ 61, 63–65, 67–70.)  Facility management costs were not reduced by the margins anticipated, and the 175-bed facility, which was increased to 185 beds, failed to meet the 90% stable occupancy rate necessary for monthly distributions under expected financial conditions. (*Id*. at ¶¶ 57, 81.)  Eventually, defendants requested permission to sell Mesa. (*Id*. at ¶ 77, 79.)  Plaintiffs declined to sign the sale agreement. (*Id*. at ¶ 79.)  On January 16, 2019, this suit was filed in a California state court. (Doc. No. 1, Ex. C.)  The action

/////

/////

was removed by defendants to this federal court on March 21, 2019. (Doc. No. 1.) Defendants[4] filed motions to dismiss, and plaintiffs opposed. (Doc. Nos. 11, 14, 21, 23–29.) The court issued an order dismissing plaintiffs' complaint in its entirety, without prejudice, due to plaintiffs' failure to meet the applicable pleading standards. (*See* Doc. No. 42.) The court admonished plaintiffs at that time "[s]hould [p]laintiffs choose to amend," it was to be "in strict compliance with [the court's] order," due to the court's limited resources "to evaluate further pleadings for improperly pled facts." (*Id*. at 17.)

On March 2, 2020, plaintiffs filed their first amended complaint. (*See* Doc. No. 44.) Defendants filed a second round of motions to dismiss, and plaintiffs opposed. (Doc. Nos. 51, 55, 57, 61–63, 67, 68.) Defendants replied thereto. (Doc. Nos. 64–66, 69.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Federal Rule of Civil Procedure 8(a) does not require

---

[4] Defendant Brian Glover died in a car accident on January 24, 2019. (Doc. No. 1 at ¶ 8.) The Estate of Brian Glover has since been substituted in as a defendant.

detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 676.  A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting [the] fraud [.]" Fed. R. Civ. P. 9(b).  This heightened pleading standard requires the party to do more than simply identify a transaction and allege in a conclusory manner that the transaction was fraudulent.  *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*.[5]  Rather, the party must set forth in detail the "who, what, when, where, and how" of the alleged fraudulent conduct.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  This is "more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."[6]  *GlenFed*, 42 F.3d at 1548.

The purpose of Rule 9(b) is to protect defendants from factually baseless claims of fraud inasmuch as it is meant to give defendants notice of the claims asserted against them.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  When a party averring fraud fails to meet the heightened pleading standard of Rule 9(b), dismissal of the claim is proper.  *See Vess*, 317 F.3d at 1107 ("A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under

---

[5]  The pleading standard discussed in *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds*, was partially abrogated by the Private Securities Litigation Reforms Act of 1995, which requires that both falsity and scienter be pleaded with particularity in private securities fraud litigation.  *See Ronconi v. Larkin*, 253 F.3d 423, 428-29 (9th Cir. 2001).  Pre-Act cases, including *GlenFed*, required only that falsity be pled with particularity.

[6]  "Neutral facts" include the "time, place, and content of an alleged misrepresentation."  *Yourish v. California Amplifier*, 191 F.3d 983, 993 n.10 (9th Cir. 1999) (internal quotations and citation omitted).

Rule 12(b)(6) for failure to state a claim.").

**ANALYSIS**

In the court's previous order addressing the first set of motions to dismiss, plaintiffs were instructed to adhere closely to the court's order.  (Doc. No. 42 at 17.)  In plaintiffs' FAC, they have addressed certain of the court's grounds for dismissal, but not others, through additional allegations, as discussed below.  Plaintiffs have not addressed in their FAC any of the alternative grounds for dismissal raised by defendants in the first round of motions to dismiss, and defendants have renewed their motions for dismissal on those grounds, and others, in this second round of motions.  (*See* Doc. Nos. 11, 21, 23–25, 51, 55, 57, 67.)  While the court had declined at the time to rule on those alternative grounds, the court more than once directed plaintiffs' attention to the alternative issues raised by defendants for plaintiffs' review if plaintiffs opted to file an amended complaint.  (Doc. No. 42 at 10, 11, 14, 16.)

In addition to not complying fully with the court's order of January 31, 2020, and not addressing defendants' alternative grounds for dismissal from round one of the motions to dismiss in their FAC, plaintiffs also did not comply with Local Rule 220 when they filed their FAC.  In this regard, Local Rule 220 states in relevant part that:

> Unless prior approval to the contrary is obtained from the Court, every pleading to which an amendment or supplement is permitted as a matter of right or has been allowed by court order shall be retyped and filed so that it is complete in itself without reference to the prior or superseded pleading.  No pleading shall be deemed amended or supplemented until this Rule has been complied with.

Instead, plaintiffs filed an interlined version of their FAC.  Defendants raise this issue (Doc. No. 51 at 6 n.2); however, rather than deeming the FAC as not timely filed, the court has elected to address the merits of the pending motions to dismiss below.

As with the first set of motions to dismiss, defendants again largely move for dismissal arguing that plaintiffs have failed to plead their claims with the necessary particularity required by Rule 9(b) and other applicable legal standards.  Defendants also raise certain statutory bars.  These issues are discussed on a claim-by-claim basis below.

/////

**A.      Cause of Action One:  Fraud—Intentional Misrepresentation**

Plaintiffs' first cause of action alleges fraud in the form of intentional misrepresentations by defendants Glover, Roderick, Frontier Management, Smith, and Newmark LLC.  For a claim of intentional misrepresentation under California law, a plaintiff must plead and prove: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977-78 (N.D. Cal. 2016).  Because this is a fraud claim, it is subject to Rule 9(b)'s heightened pleading standard, which requires plaintiffs to allege "who, what, when, where, and how" in their allegations.  *Vess*, 317 F.3d at 1106.  The court explained the application of this standard in detail in its order of January 31, 2020.  (Doc. No. 42 at 5–8.)

Plaintiffs have alleged eleven representations that they believe support the fraud claim. Each of the eleven is examined below and measured against the pleading standard and law relevant to fraud claims.

1.  Representation One:  Defendants Would Obtain Solely a Take-Out Loan

Plaintiffs first argue that defendants falsely represented that they would "obtain solely a take-out loan[7] for the purchase of the [Mesa] project."  (Doc. No. 44 at ¶¶ 101(a), 114(a).) Plaintiffs' theory of this claim, however, is unclear and contradictory because plaintiffs have pled insufficient facts to support their claim or have pled the facts in such a way that those facts alleged do not clearly support the representation.  In reviewing a motion to dismiss, a court is not required to:

> accept as true allegations that contradict matters properly subject to judicial notice, *see Mullis v. United States Bankruptcy Court,* 828 F.2d 1385, 1388 (9th Cir. 1987), that are conclusory or mere legal conclusions, that are unwarranted deductions of fact or unreasonable inferences, *see Clegg v. Cult Awareness Network,* 18 F.3d 752, 754– 55 (9th Cir. 1994); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981), that are contradicted by documents referred to

---

[7] "Takeout" financing is "a loan on a property that will be paid back over a long period of time and that replaces a short-term loan that was used to pay for building the property."  *Takeout Financing, Cambridge Business English Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/takeout-financing (last visited November 22, 2021).

> in the complaint, *see Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), or that are internally inconsistent, *Response Oncology, Inc. v. Metrahealth Ins. Co*., 978 F. Supp. 1052, 1058 (S.D. Fla.1997).

*Riggs v. Clark Cty. Sch. Dist.*, 19 F. Supp. 2d 1177, 1179 (D. Nev. 1998).

Plaintiff's FAC does not indicate that any defendant asserted affirmatively that only a take-out loan would be obtained. Rather, in relation to this alleged representation, plaintiffs point to paraphrasing or quotes from three emails (January 9, January 16, and February 10, 2015). (Doc. No. 61 at 12–14 (citing Doc. No. 44 at ¶¶ 40, 41, 44).) In those emails, defendant Smith reported to plaintiffs that a take-out loan commitment had been made by a bank; that the loan terms had changed "to be less than 4% with a 30 year amortization," reducing "annual debt service"; and that an investment analysis had been revised to reflect the new "sub 4%" take-out loan, among other things. (Doc. No. 44 at ¶¶ 40, 41, 44.) Plaintiffs have not pled any other "statements, emails, or affirmative representations" to support their claim, despite their bald assertion otherwise in their FAC. (*Id*. at ¶ 62.) It is clear from the content of the cited emails that defendants did not affirmatively state that they would obtain only a take-out loan. Instead, plaintiffs drew an inference based on what was not said, which impacts the facts that must be pled here in relation to the other elements of fraud.

The FAC further alleges that some point prior to the close of escrow, which occurred sometime around June 30, 2015, two plaintiffs explicitly discussed with defendant Glover the "possibility of a bridge loan" and "cautioned defendant Glover regarding the exorbitant fees and rates." (*Id*. at ¶¶ 59, 62.) "After this conversation the subject . . . was dropped," apparently by both plaintiffs and defendants. (*Id*.) While this conversation occurred after plaintiffs had invested, and therefore any representations made during the conversation could not have induced investment, the fact that plaintiffs inquired about the possibility of a bridge loan stands in contradiction to plaintiffs' assertion that defendants' "statements, emails, and affirmative representations" indicated defendants would only obtain a take-out loan.

The bridge loan conversation also contradicts an assertion that defendants concealed or omitted the possibility of obtaining a bridge loan from plaintiffs. The fact a conversation could

8

1    and did occur on the subject means the possibility of a bridge loan was not unknown to plaintiffs.

2    As it relates to plaintiffs' FAC, assuming an allegation of concealment or omission, plaintiffs

3    have not pled how and when they became aware of the possibility of the bridge loan such that the

4    bridge loan conversation prior to June 30, 2015, does not serve to contradict their alleged

5    unawareness.

6        Importantly, concealment or omission is contradicted internally by another, more

7    compelling alleged fact contemporaneous to plaintiffs' investment.  Plaintiffs incorporated the

8    first amended operating agreement into their FAC, and the terms of the first amended operating

9    agreement explicitly granted authority to "a Manager, acting alone, . . . to enter into any

10    additional financing for Company purposes such as Manager determines is necessary or

11    convenient . . . .").  (Doc. No. 44, Ex. 1 at 123.)

12        The ratification of the first amended operating agreement is cited by plaintiffs as the date

13    that marks the finalization of the sale of the Mesa securities to them (though this date is

14    contradicted by plaintiffs' FAC).  (Doc. No. 61 at 13; *but see* Doc. No. 44 at ¶ 123 ("On or about

15    December 2014 through March 2015, Defendants, in Bakersfield, California, offered and sold to

16    Plaintiffs 80% interest in Nominal Defendant Mesa Senior Living LLC for $6.3 million.").)  Yet

17    plaintiffs have not pled facts to support justifiable reliance on the inference they drew from the

18    take-out loan communications *in light of* the internal contradiction created by incorporation of the

19    first amended operating agreement and its plain language permitting a manager to procure other

20    financing.  Because this claim sounds in fraud, plaintiffs cannot baldly plead the elements of the

21    claim, such as justifiable reliance—they must support that claim by pleading facts, as well:

> 22
> 23
> 24    In an action for fraud, reliance is proved by showing that the defendant's misrepresentation or nondisclosure was "an immediate cause" of the plaintiff's injury-producing conduct.  (*Molko v. Holy Spirit Assn., supra,* 46 Cal.3d 1092, 1108.)  A plaintiff may establish that the defendant's misrepresentation is an "immediate cause" of the plaintiff's conduct by showing that in its absence the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.  (*Ibid.*)
> 25
> 26

27    *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1111 (1993) (Kennard, J., concurring in part and dissenting

28    in part).  Plaintiffs have not pled with the particularity required under Rule 9(b) and California law

the facts supporting their reliance when viewed against their other factual allegations.

Plaintiffs have simply not pled facts to support their claim that defendants made a false assertion regarding obtaining a bridge loan.  To the extent plaintiffs are alleging concealment or omission, they have not pled facts sufficient to support the claim given the internal contradictions in the factual allegations of their FAC.  Even if plaintiffs have pled facts sufficient to support concealment or omission, they have not pled facts to support justifiable reliance given the terms of the first amended operating agreement and plaintiffs' own admission they were on notice by some unknown point that a bridge loan was a "possibility."

2.  Representation Two:  Defendant Roderick Would Buy Out Any Investor's Shares

The second representation plaintiffs offer to support their fraud claim is that during the December 16, 2014, meeting at Mama Tosca's in Bakersfield, at which meeting the Mesa investment opportunity was presented to plaintiffs, defendants Glover and Smith represented that, "in the past, in similar projects if an investor was unhappy or needed to get out of the project, Defendant Roderick would buy them out to avoid unhappy investors." (Doc. No. 44 at ¶¶ 38, 101(b), 114(b).)

Plaintiffs have also plead insufficient facts to support their claim in this regard.  First, in their FAC, plaintiffs do not allege that the parties reached an agreement that plaintiffs would be bought out as a condition of investment, or even that plaintiffs were told that they would be bought out.  Instead, they allege only that it was conveyed to them that defendant Roderick had bought out parties in the past.  Second, to the extent plaintiffs claim that they relied on the representation and it was false, plaintiffs allege in ¶ 102(b) of their FAC, on information and belief, that defendant Roderick "refused to buy out any investor's shares when they became dissatisfied with the investment in [Mesa] in and around September 2017." (Doc. No. 68 at 23 (quoting Doc. No. 44 at ¶ 102(b)).)  As a general rule, "allegations of fraud based on information and belief do not satisfy Rule 9(b)." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Under Rule 9(b), "a plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Id*.  Plaintiffs have failed to do so here.

/////

3.   <u>Representation Three:  Courtyard Towers Was a Good Investment</u>

In the third representation in support of plaintiffs' fraud claim, plaintiffs identify a statement made on June 3, 2015, in which defendant Glover, in the presence of defendant Roderick and plaintiffs, stated that "Courtyard Towers [Mesa] was a good investment."  (Doc. No. 44 at ¶¶ 57, 101(c), 114(c).)  This representation cannot support a fraud claim because it is inactionable puffery.  The Ninth Circuit has affirmed the dismissal of puffery on a motion to dismiss:  "Statements of mere corporate puffery, 'vague statements of optimism like "good," "well-regarded," or other feel good monikers,' are not actionable because 'professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives.'"  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060, 1064 (9th Cir. 2014).

Plaintiffs counter that it is a question of fact for the jury whether this representation constitutes puffery.  (Doc. No. 61 at 16.)  However, the citation provided by plaintiffs explains that a question of fact is raised only "[w]here there is any doubt" whether "a representation was intended and understood as a mere expression of opinion or a statement of fact."  (*Id.* (quoting *Carlson v. Brickman*, 110 Cal. App. 2d 237, 247 (1952)).)  However, there is no such doubt where puffery is involved, as is the case here.

Further, by all accounts, including plaintiffs', plaintiffs had already invested in Mesa by June 3, 2015.  (Doc. Nos. 61 at 13; 44 at ¶ 123.)  Therefore, this representation could not have fostered reliance that induced plaintiffs' investment.  (*See* Doc. No. 44 at ¶ 108 ("As a direct, proximate and legal cause and result of the fraudulent conduct of the Defendants as herein alleged, the Plaintiffs were induced into investing in Nominal Defendant Mesa . . .").)

Plaintiffs argue that because escrow had not closed on the purchase of the Mesa property by June 3, 2015, plaintiffs relied on the representation in completing the purchase of the property, notwithstanding the fact that "the representation was made after the Plaintiffs' purchase of the securities . . ." (Doc. No. 61 at 16.)  Plaintiffs provide no authority for their argument, and their position is without merit.  Plaintiffs cannot create a moving target of their theory of their claim by now stating "[p]laintiffs [relied] on the representation as to *Mesa's investment in the Mesa*

/////

1   *Property*." (*Id.*)  The third representation upon which plaintiffs rely cannot, as a matter of law,

2   support a fraud claim.

3           4.  <u>Representation Four:  Defendant Frontier Would Increase Occupancy Rates</u>

4         For their fourth representation in support of their fraud claim, plaintiffs point to

5   defendants "implicitly alleging" that defendant Frontier would increase the occupancy rates of

6   Mesa.  (Doc. No. 44 at ¶¶ 101(d), 114(d).)  The representation was not allegedly made directly by

7   any defendant, but according to plaintiffs, it can be inferred from defendants' statements, such as:

8   
9           It was represented during the meeting by Defendants Glover and
        Smith that Defendant Roderick and his company Defendant Frontier

10          Management were premier assisted living and memory care facility
        manage and operator, respectively, and that they owned and operated

11          many assisted living and memory care facilities throughout the
        United States.

12  (Doc. No. 61 at 16–17 (citing Doc. No. 44 at ¶ 38).)  Plaintiffs further cite ¶¶ 40, 41, and 44 of the

13  FAC as implicitly alleging that Frontier would increase occupancy at Mesa.  (*Id.*)

14        First, the allegations of ¶ 38 of the FAC cannot plausibly support the purported fourth

15  representation.  A misrepresentation in a state law fraud claim may be constituted by "[a] false

16  representation, concealment, or nondisclosure."  *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638

17  (1996).  Here, plaintiffs do not allege concealment or nondisclosure of a misrepresentation.

18  Instead, they contend a false representation may be "implicit."  (Doc. No. 61 at 16.)  In

19  considering a motion to dismiss, a court need not accept unreasonable inferences, such as this.

20  *Riggs*, 19 F. Supp. 2d at 1179.  Plaintiffs have not cited any authority that supports their position,

21  particularly in a claim for fraud.

22        The court has also not identified anything in the allegations of ¶¶ 40, 41, or 44 of the FAC

23  that states anything akin to a representation Frontier would increase occupancy rates.  Plaintiffs

24  have not identified with any particularity which statements within those paragraphs may be

25  construed as the representation that forms the basis of this claim, why that is the case, or under

26  what authority something "implicit" may be a misrepresentation.  It is not the court's role to

27  develop an argument for plaintiffs, including on a motion to dismiss in which the court construes

28  the pleading in the light most favorable to plaintiffs.

Second, the fourth representation, even if actually made, cannot support a cause of action for intentional misrepresentation because it is, at its core, a statement or prediction about future events because it is tied to future market conditions.  Such statements are not actionable misrepresentations as a matter of law in California:

> The law is well established that actionable misrepresentations must pertain to past or existing material facts. (*Gentry v. eBay, Inc.* (2002) 99 Cal. App. 4th 816.)  Statements or predictions regarding future events are deemed to be mere opinions which are not actionable. (*Neu–Visions Sports, Inc. v. Soren/McAdams/Bartells* (2000) 86 Cal. App. 4th 303, 309–310; *Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn*. (1988) 205 Cal. App. 3d 1415; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 744, pp. 1123–1125.)

*Cansino v. Bank of Am.,* 224 Cal. App. 4th 1462, 1469–70 (2014) (sustaining dismissal without leave to amend in demurrer to second amended complaint).

Here, plaintiffs' argument that an affirmative representation was made implicitly cannot support a fraud claim and, in any event, a statement regarding future events is not actionable.

5.  Representation Five:  Defendant Frontier Would Decrease Operating Expenses

In their fifth representation to support their fraud claim, plaintiffs identify statements made by defendant Smith in three emails, dated January 9, 2015; January 16, 2015; and February 10, 2015.  (Doc. No. 44 at ¶¶ 40, 41, 44, 101(e), 114(e).)  In those emails, defendant Smith indicated that defendant Roderick "believe[d]" Frontier would reduce operating expenses at Mesa and that "it remain[ed] the focus of Frontier [] to reduce operating costs . . . ."  (*Id.*)

As is the case with subsection (4) above, this is a statement or prediction about future events, which is not an actionable misrepresentation as a matter of law in California.  *Cansino,* 224 Cal. 4th at 1469–70 (sustaining judgment of dismissal without leave to amend in demurrer to second amended complaint).

Plaintiffs argue that the representation is actionable because they have alleged the statements above were made with reckless disregard to Frontier's ability to perform.  (Doc. No. 61 at 17–18.)  The case cited by plaintiffs, *Talk Radio Network Enterprises v. Cumulus Media Inc.*, 271 F. Supp. 3d 1195 (D. Or. 2017), does not apply California law to the fraudulent inducement claim in question in that case (but, to be fair, defendants cited this case to plaintiffs).

13

1    (*Id.*)  Because the principle discussed in *Talk Radio Network* arises under Oregon state law, and

2    no party has pointed to a similar authority under California law, the court declines to evaluate

3    plaintiffs' argument in this regard.[8]

4          The court also notes that, in California, whether plaintiffs' claim is pled under the law

5    pertaining to intentional misrepresentations or pertaining to negligent misrepresentations,

6    plaintiffs' argument is unavailing:  "The law is well established that <u>actionable misrepresentations</u>

7    must pertain to past or existing material facts."  *Cansino,* 224 Cal. App. 4th at 1469 (emphasis

8    added); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002) ("An essential element of a cause

9    of action for negligent misrepresentation is that the defendant must have made a

10   misrepresentation as to a past or existing material fact.").

11         Here, the representation alleged concerns future events and therefore is nonactionable.

12         6.  <u>Representation Six:  Plaintiffs Would Receive 10–12% Revenue Distributions</u>

13         Plaintiffs next allege, as their sixth representation, that defendants stated plaintiffs would

14   receive 10–12% revenue distributions monthly.  (Doc. No. 44 at ¶¶ 40, 41, 44, 101(f), 114(f).)  As

15   in subsection (4) above, this is a statement or prediction about future events, which is not an

16   actionable misrepresentation as a matter of law in California.  *Cansino,* 224 Cal. App. 4th at

17   1469–70 (sustaining a judgment of dismissal without leave to amend in demurrer to second

18   amended complaint).

19         In opposition, plaintiffs cite the decision in *In re Jogert, Inc.*, 950 F.2d 1498, 1507 (9th

20   Cir. 1991), for an exception to the general California rule.  (Doc. No. 68 at 18.)  This exception

21   "recognizes that in certain circumstances a representation made by someone possessing superior

22   knowledge or expertise may be regarded as fact."  *Cansino*, 224 Cal. App. 4th at 1470.  In

23   *Cansino* the court examined the decision in *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 408

24   (1992), which is a case that applied this exception:

25   /////

---

[8]  Plaintiffs cite *Talk Radio Network Enterprises v. Cumulus Media, Inc.*, 271 F. Supp. 3d 1195
(D. Or. 2017), several more times among their various opposition papers.  (Doc. Nos. 61–63, 68.)
For the reasons above, the court will not address further arguments of plaintiffs' that solely rely
upon that authority.

> *Bily* involved a fraud claim rooted in an opinion paragraph in an accounting firm's audit report. The paragraph read: "[T]he CPA firm's opinion that the audited financial statements, taken as a whole, are in conformity with GAAP [the accounting profession's generally accepted accounting principles] and present fairly in all material respects the financial position, results of operations, and changes in financial position of the client in the relevant periods." (*Id.* at pp. 381–382.) The court in *Bily* found that the paragraph referred to a business's financial statements during a discrete period covered by the audit; it was making no prediction of the business's future performance.

*Cansino*, 224 Cal. App. 4th at 1470.

This exception does not apply here.[9] The facts of this matter are distinguishable from those confronted by the court in *Bily* (and *Jogert*, for that matter). In *Bily*, the court found that the accounting firm's statements were not making future predictions. Here, defendants' statements predicting the future performance of Mesa and the ability for a return to be paid to investors were statements regarding future events. Therefore, those statements are not actionable in fraud.

7.   Representation Seven:  The Exit Strategy Would Be to Hold the Property
     Approximately 2–3 Years To Reduce Operating Expenses and Increase Rental Values

In representation seven, plaintiffs contend that defendants misrepresented that "[t]he exit strategy will be to hold the property approximately 2 to 3 years with the focus on reducing operating expenses and increasing rental values . . . ." (Doc. No. 44 ¶¶ 40, 41, 101(g), 114(g).) This statement was conveyed by defendant Smith in emails dated January 9, 2015, and January 16, 2015. (*Id.* at ¶¶ 40, 41.)

As in subsection (4) above, this is a statement or prediction about future events, including future market conditions, which is not an actionable misrepresentation as a matter of law in California. *Cansino,* 224 Cal. App. 4th at 1469–70. Any argument by plaintiffs focusing on reckless disregard is misplaced. Whether plaintiffs' claim is pled as intentional misrepresentation or negligent misrepresentation: "The law is well established that <u>actionable misrepresentations</u> must pertain to past or existing material facts." *Cansino,* 224 Cal. App. 4th at 1469 (emphasis

---

[9]  For brevity, the court will not repeat this analysis on each occasion plaintiffs raise the argument based on this exception, but the analysis applies to each instance.

1   added).  Here, the alleged representation clearly regards future events.

2          8.  <u>Representation Eight:  Two Companies Expressed Interest in Owning Mesa in the</u>

3              <u>Future</u>

4         The eighth representation that plaintiffs allege in support of their fraud claim is that two

5   companies (Formation Capital and American Realty Capital) "expressed interest in owning

6   [Mesa] in the future."  (Doc. No. 44 at ¶¶ 40, 41, 101(h), 114(h).)  This statement was conveyed

7   by defendant Smith in emails dated January 9, 2015, and January 16, 2015.  (*Id*. at ¶¶ 40, 41.)

8   Plaintiffs further allege on information and belief that the companies "never expressed an interest

9   in owning the [Mesa] property in the future following 2 years of Frontier Management's

10  involvement as operator/manager."  (*Id*. at ¶ 102(h).)

11        Plaintiffs plead insufficient facts to support their claim.  As mentioned, as a general rule,

12  "allegations of fraud based on information and belief do not satisfy Rule 9(b)."  *Neubronner*, 6

13  F.3d at 672.  Under Rule 9(b), "a plaintiff who makes allegations on information and belief must

14  state the factual basis for the belief."  *Id*.  Plaintiffs have failed to do so.

15        Further, plaintiffs have not alleged sufficient facts under Rule 9(b) regarding their reliance

16  on a report of the purported interest of third parties in performing an act two to three years in the

17  future.  The third party's interest was not a promise or a formal or informal agreement to perform.

18  The third parties were not a part of the sale of the securities or under contract with any party

19  thereto to perform the act in the future.  "[R]eliance is proved by showing that the defendant's

20  misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing

21  conduct," i.e., where in the absence of the defendant's misrepresentation, "the plaintiff 'in all

22  reasonable probability' would not have engaged in the injury-producing conduct."  *Mirkin*, 5 Cal.

23  4th at 1111.  Plaintiffs' general expressions of reliance alleged in ¶¶ 106–07, 119–20 are

24  insufficient to support their claim.

25        9.  <u>Representation Nine:  The Value of Mesa in 2–3 Years Would Be $28–30 Million</u>

26        Plaintiffs' ninth representation in support of their fraud claim concerns defendants'

27  assertion that "the value of [Mesa] in 2 to 3 years would be $28 to $30 million with 80% of the

28  profit to the equity investors and 20% to the operator."  (Doc. No. 44 at ¶ 41, 101(i), 114(i).)  This

1    was conveyed to plaintiffs by defendant Smith in an email dated January 16, 2015.  (*Id*. at ¶ 41.)

2    As in subsection (4) above, this is a statement or prediction about future events, including future

3    market conditions, which is not an actionable misrepresentation as a matter of law in California.

4    *Cansino,* 224 Cal. App. 4th at 1469–70.  Any argument by plaintiffs focusing on reckless

5    disregard is misplaced.  Whether plaintiffs' claim is pled as an intentional misrepresentation or a

6    negligent misrepresentations:  "The law is well established that <u>actionable misrepresentations</u>

7    must pertain to past or existing material facts."  *Cansino,* 224 Cal. App. 4th at 1469 (emphasis

8    added).  Here, the alleged representation clearly regards only future events.

9          10. <u>Representation Ten:  The Managers Would Not Collect Management Fees</u>

10          Plaintiffs tenth representation to support their fraud claim alleges the managers

11    misrepresented that they "would not collect management fees."  (Doc. No. 44 at ¶¶ 101(j),

12    114(j).)  However, according to the allegations of the FAC, defendants did not make an

13    affirmative statement to this effect.  Instead, plaintiffs contend that the terms of the first amended

14    operating agreement precluded defendants from collecting fees, yet they did.  (*Id*. at ¶ 76.)

15          The provision of the first amended operating agreement that plaintiffs refer to states:

16
17
18
19
20

> The Members specifically consent to and acknowledge that the Company shall contract with Frontier Management, an affiliate of a Manager, Gregory Roderick, for the management of the Project, and payment of a management fee of five percent (5%) of gross revenues from the Project on a monthly basis.  For the avoidance of doubt, this fee is paid for the management of the Project, not to the Manager in their capacity or services as Manager.

21    (Doc. No. 44 at ¶ 90; Ex. 1 at § 9.1.)

22          Defendants, on the other hand, cite § 9.3 of the first amended operating agreement, which

23    states:

24
25
26
27

> All Members recognize that the Company may enter into agreements from time to time with the Managers or their affiliates for services in connection with development, construction and operation of the Project.  With respect to any other agreement between the Company and the Manager or their affiliates, the Members hereby agree and consent that:

28    /////

1

2
> (a) Such agreements shall provide for normal and competitive fees to be paid by the Company, representing reasonable profit and allowances to the contracting parties; and

3

4
> (b) Such agreements shall not require the specific approval of all Members or any Member . . . .

5
(Doc. Nos. 44, Ex. 1 at § 9.3; 51-1 at 23–24.)

6      Defendants argue that because the plain language of § 9.3 permits managers to be paid

7 fees, there is no misrepresentation alleged:  defendants never affirmatively stated they would not

8 collect fees and the terms of § 9.3 permit defendants to be paid "normal and competitive fees."

9 (Doc. No. 51-1 at 23–24.)  Thus, without more, according to defendants, there is no actionable

10 fraudulent statement upon which plaintiffs base their claim.

11      The court again finds the facts as pled insufficient to form the basis of an allegation of

12 fraud.  First, there was no affirmative representation by defendants that they would not collect

13 fees.  The plain language of § 9.3 allows managers to collect fees.  While plaintiffs seem to

14 contend that fees collected by managers for services in connection with operation of "the Project"

15 can be distinguished from fees collected by managers for managing Mesa, plaintiffs do not

16 explain the difference.  (Doc. No. 61 at 20–21.)

17      In addition, plaintiff's own admissions suggest that the first amended operating agreement

18 was executed after the time of the sale.  If this is the case, it could not induce reliance as a matter

19 of law as explained above.  Plaintiffs' FAC states "[o]n or about December 2014 through March

20 2015, Defendants, in Bakersfield, California, offered and sold to Plaintiffs 80% interest in

21 Nominal Defendant Mesa Senior Living LLC for $6.3 million."  (Doc. No. 44 at ¶ 123.)

22 Plaintiffs clarify in their opposition to the pending motions, however, that ¶ 55 of the FAC

23 indicates when the securities were sold.  (Doc. No. 61 at 13 ("Moreover, the sale of the securities

24 occurred on or about April 21, 2015 (FAC ¶ 55) . . .").)  Paragraph 55 of the FAC alleges:

25

26

27
> On or about April 21, 2015 Defendant Smith sent an email to Plaintiffs with a copy of the fully executed First Amended and Restated Operating Agreement attached. Plaintiffs executed the First Amended and Restated Operating Agreement which became effective retroactively as of March 4, 2015.

28 /////

18

A court need not "accept as true allegations that . . . are contradicted by documents referred to in the complaint, *see Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994), or that are internally inconsistent, *Response Oncology, Inc. v. Metrahealth Ins. Co.,* 978 F. Supp. 1052, 1058 (S.D. Fla. 1997)." *Riggs*, 19 F. Supp. 2d at 1179.  Here, accepting plaintiff's assertion set forth in their opposition brief at face value, plaintiffs are alleging, in essence, that defendants collected fees in violation of the terms of the first amended operating agreement, which was executed after the sale was consummated.  As a result of this timing, plaintiffs could not have relied on promises made in the amended operating agreement when they agreed to the sale.  For this reason, that claim is not sufficiently pled and does not sound in fraud.

> 11. <u>Representation Eleven:  Mesa Would Not Incur More Debt until the Arbor [] Loan Was Paid in Full</u>

In its eleventh representation in support of its fraud claim, plaintiffs identify a term included in the second amended operating agreement executed on October 19, 2015, which states in relevant part that:

> (a)  Until the Loan is paid in full, the Company shall remain a Single Purpose Entity.
>
> (b)  A "Single Purpose Entity" means a corporation, limited partnership, or limited liability company which, at all times since its formation and thereafter will satisfy each of the following conditions:
>
> ***
>
> (x)  shall not incur any debt, secured or unsecured, direct or contingent (including, without limitation, guaranteeing any obligation), other than, (A) the loan (and any further indebtedness as described in Section 11.11 of the Loan Agreement with regard to Supplemental Loans) and (B) customary unsecured trade payables incurred in the ordinary course of owning and operating the Mortgaged Property provided the same are not evidence by a promissory note, do not exceed, in the aggregate, at any time a maximum amount of two percent (2%) of the original principal amount of the Loan and are paid within sixty days (60) of the date incurred.

(Doc. No. 44 at ¶ 62, Ex. 2 at 113–114.)  Plaintiffs summarize this provision as stating:

1    "Nominal Defendant Mesa would not incur additional debt until the Arbor Commercial Funding,

2    LLC, loan was paid in full."  (Doc. No. 44 at ¶ 101(k), 114(k).)

3          This representation could not have fostered reliance that induced plaintiffs' investment.

4    (*See* Doc. No. 44 at ¶ 108 ("As a direct, proximate and legal cause and result of the fraudulent

5    conduct of the Defendants as herein alleged, the Plaintiffs were induced into investing in Nominal

6    Defendant Mesa . . .").)  As noted above, the second amended operating agreement was not

7    executed in full until October 19, 2015, while plaintiffs contend in their opposition brief that their

8    investment in Mesa occurred on April 21, 2015.  (Doc. No. 61 at 13 ("Moreover, the sale of the

9    securities occurred on or about April 21, 2015 (FAC ¶ 55) . . .").)  Because the term regarding

10   Mesa incurring more debt occurred after plaintiffs had already purchased the securities, plaintiffs

11   could not have relied on the statement in making their investments.

12         Plaintiffs argue that:

13              The execution of the Second Amendment to the Operating
                Agreement was to secure the required financing to purchase the Mesa
14              Property.   (FAC ¶ 56 and 62.)   The sole purpose of the Mesa
                Investment was to purchase and operate the Mesa Property.  (FAC ¶
15              88, Ex. § 2.)  Therefore, when the Second Amendment was executed
                the deal, purchase of Mesa for the purpose of purchasing the Mesa
16              property, was not fully consummated, and thus the Second
                Amendment was made prior to Plaintiffs full investment in Mesa.
17

18   (Doc. No. 61 at 21.)

19         Plaintiffs, however, cite no authority in support of this argument.  As in subsection (3)

20   above, it appears plaintiffs seek to create a moving target of their theory of their claim.  Plaintiffs'

21   argument in this regard is without merit.  Representation eleven fails to state sufficient facts to

22   support plaintiffs' claim.  For these reasons, plaintiffs' eleven representations are either

23   nonactionable as a matter of law or fail to allege a sufficient claim under Rule 9(b).

24         Accordingly, plaintiffs' first cause of action will be dismissed in its entirety and with

25   prejudice.

26   **B.    Cause of Action Two:  Fraud—Negligent Misrepresentation**

27         The court incorporates the above analysis from § A of this order, to the extent applicable

28   and for the same reasons, in addressing plaintiffs' second cause of action which will also be

20

1    dismissed.

2    **C.      Cause of Action Three:  Securities Fraud under Cal. Corp. §§ 25401 and 25501**

3           Plaintiffs' third cause of action alleges misrepresentation and fraud under California

4    Corporations Code § 25401, "Offer, sale, or purchase of securities; fraudulent or misleading

5    actions," and § 25501, "Violation of Section 25401; suit for rescission or damages; defense."

6    (Doc. No. 44 at ¶¶ 122–132.)  This claim is alleged against defendants Glover, Roderick, Frontier

7    Management, Smith, and Newmark LLC.  The Rule 9(b) pleading standard applies because the

8    claim is grounded in fraud, even though it is brough under California state law.  *Vess*, 317 F.3d at

9    1103.

10          The court previously dismissed plaintiffs' third cause of action, finding that they had not

11   satisfied the applicable heightened pleading standard under Rule 9(b).  (Doc. No. 42 at 10.)

12   Because of that, the court declined to examine other grounds for dismissal at that time.  (*Id.*)

13   Nonetheless, the court noted then that defendants had raised as an issue the applicability of §§

14   25401 and 25501 as a matter of law to the named defendants in this action.  (*Id.*)

15          During the first round of motions to dismiss, plaintiffs' opposition to this alternative

16   ground raised by defendants indicated that in fact plaintiffs were not alleging primary liability

17   under §§ 25401 and 25501 but were instead pursuing a claim of secondary liability under

18   California Corporations Code §§ 25504, 25504.1 by alleging that defendants were agents or

19   actors who materially assisted in a violation of § 25401.  (*See, e.g.,* Doc. No. 27 at 4–5.)

20   Defendants pointed out at the time that plaintiffs' third cause of action did not state a claim for

21   secondary liability under § 25504.1, in that "neither the label nor the substance" put defendants

22   on notice of joint and several liability for materially assisting a violation of § 25401.  (Doc. No.

23   35 at 3–4.)  While defendants' argument was not the basis for the court's dismissal order, the

24   court also did not indicate that defendants' argument as to that point was without merit.

25          In plaintiffs' FAC, they have included new factual allegations addressing the timing of the

26   falsity alleged—i.e., plaintiffs now aver that the statements in question were false at the initial

27   time they were made and why they were false at that time.  (Doc. No. 44 at ¶ 127(a)–(k).)

28   Otherwise, plaintiffs' cause of action remains unchanged.  Importantly, this cause of action as

1   plead in the FAC still refers only §§ 25401 and 25501 and does not incorporate the concepts of

2   secondary liability or material assistance within the allegations.

3       Section 25401 provides for liability only for the actual seller of a security.  *S.E.C. v.*

4   *Seaboard Corp.*, 677 F.2d 1289, 1296 (9th Cir. 1982).  As defendants note, plaintiffs specifically

5   omitted Mesa from the allegations advanced in support of this claim, so there is no primary

6   liability alleged against Mesa.  (Doc. No. 65 at 15.)  Plaintiffs respond by quoting, without

7   substantive argument, the decision in *Moss v. Kroner*, 197 Cal. App. 4th 860, 875 (2011), in

8   which the court stated in part that "as long as primary liability is stated or established with the

9   privity required by section 25501 and a violation of section 25401, secondary liability may also

10  exist under sections 25504 and 25504.1 for others who participated in the violation in the specific

11  roles listed in those sections."  Plaintiffs do not identify, however, what portion of their FAC sets

12  forth allegations satisfying the requirement that primary liability be stated or established with the

13  privity required.

14      Further, plaintiffs cite the decision in *Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp.

15  1402, 1406–07 (N.D. Cal. 1992), to suggest that control person liability applies here, which may

16  attach to a person who is not a seller so long as the person controls the seller of the securities.

17  First, plaintiffs have not pled "control" in the manner required under *Wanetick* and related cases.

18  *See* 811 F. Supp. at 1406–07 (stating "allegations on 'control person' status, must inform the

19  defendants who they are alleged to control and what acts or status indicate such control . . . [m]ere

20  titles are not adequate indicators of control authority").  Second, reiterating the point above, "if

21  control person liability were properly alleged under § 25504, plaintiffs needed to plead that they

22  purchased securities from the company that was alleged to be liable under § 25501, not that they

23  purchased them from the defendants alleged to be secondarily liable."  *Moss*, 197 Cal. App. 4th at

24  874 (citing *Bains v. Moores*, 172 Cal. App. 4th 445, 479 (2009)).  Here, plaintiffs have not pled

25  they purchased securities from the company liable under § 25501, Mesa.  (Doc. No. 44 at ¶ 123

26  ("On or about December 2014 through March 2015, Defendants, in Bakersfield, California,

27  offered and sold to Plaintiffs 80% interest in Nominal Defendant Mesa Senior Living LLC for

28  $6.3 million.").)

Therefore, the court will dismiss plaintiffs' third cause of action because defendants cannot be held primarily liable under §§ 25401 and 25501 based upon the factual allegations of the FAC as they stand, and plaintiffs, even with notice, did not amend the label and substance of their third cause of action to allege secondary liability. Plaintiffs were on notice of this issue from the first round of motions to dismiss, but they opted not to amend. For all of these reasons, the court will dismiss plaintiffs' third cause of action with prejudice.

**D.      Cause of Action Four: Violation of Oregon Revised Statutes §§ 59.115 and 59.135**

For their fourth cause of action, plaintiffs assert a claim under Oregon Revised Statutes §§ 59.115 and 59.135. (Doc. No. 44 at ¶¶ 133–143.) This claim is alleged against all defendants except nominal defendant Mesa. Because the claim is grounded in fraud, it too is subject to the Rule 9(b) heightened pleading standard, even though the claim is predicated on Oregon state law. *Vess*, 317 F.3d at 1103.

The court previously dismissed plaintiffs' fourth cause of action for failing to meet the Rule 9(b) pleading standard and at that time declined to address defendants' other grounds for dismissal because of the reliance on that ground. (Doc. No. 42 at 10.) Plaintiffs have included new factual allegations addressing the timing of the falsity alleged—i.e., plaintiffs now aver that the statements in question were false at the time they were initially made and why they were false at that time. (Doc. No. 44 at ¶ 138(a)–(k).) The claim has not been otherwise revised by plaintiffs.

This cause of action implicates a third statute in addition to the two listed by plaintiffs, and a brief summary of all three is necessary. First, § 59.115 establishes the liability of a seller of a security to the purchaser under certain conditions, including fraud. As it relates to fraud, § 59.115 incorporates violations of § 59.135(1) or (3). Or. Rev. Stat. § 59.115(1)(b). Next, § 59.135 makes it unlawful to engage in certain practices or actions in relation to the sale of a security. The unlawful practices include employing fraud, deceit, or untrue statements of material fact, among other things. Or. Rev. Stat. § 59.135. Finally, the third statutory provision is § 59.335, "Application of particular provisions," which defines the conditions under which or the persons against whom §§ 59.115 and 59.135 may be enforced. Subsection (1) of § 59.335

1   restricts application of § 59.115 to offers to sell made in Oregon or offers to buy when the offer is

2   both made and accepted in the state.  Subsection (3) of § 59.335 restricts application of § 59.135

3   to "federal covered investment advisers and state investment advisers" where "an act instrumental

4   in effecting prohibited conduct is done in this state, whether or not either party is then present in

5   this state."

6         Plaintiffs' complaint alleges that interests in Mesa were "offered and sold" in California.

7   (Doc. No. 44 at ¶ 134.)  Therefore, § 59.115 is not applicable as a matter of law.  Presumably

8   because of this, in plaintiffs' opposition, they argue that "act[s] instrumental in effecting

9   prohibited conduct" were done in Oregon, implicating § 59.135.  (Doc. Nos. 61 at 23; 68 at 26.)

10  Specifically, they contend that "the Subscription agreement was prepared by Defendant Gregory

11  Roderick who is a resident of Portland, Oregon (FAC ¶ 23), attorneys, and according to signature

12  pages was to be returned to Roderick for his acceptance."  (Doc. No. 68 at 26.)  They further add

13  that ". . . Glover resided in Oregon."  (*Id*. at 27.)

14        Assuming without deciding that those connections to Oregon constitute "an act

15  instrumental in effecting prohibited conduct" under § 59.335, plaintiffs still have failed to allege

16  one crucial element:  nowhere do they claim that any defendant is a federal covered investment

17  adviser or state investment adviser.

18        For that reason, plaintiffs' fourth cause of action will also be dismissed with prejudice.

19  **E.    Cause of Action Seven:  Securities Fraud under 17 C.F.R. § 240.10b-5**

20        As their seventh cause of action, plaintiffs allege securities fraud under 17 C.F.R.

21  § 240.10b-5.  (Doc. No. 44 at ¶¶ 144–56.)  The claim is asserted against all defendants, excluding

22  nominal defendant Mesa.

23        The court previously stated the law applicable to such claims as this one:

24          The elements to prove a primary violation of Rule 10b–5 are: "(1) a
25          material misrepresentation or omission of fact, (2) scienter, (3) a
            connection with the purchase or sale of a security, (4) transaction and
26          loss causation, and (5) economic loss.  At the pleading stage, a
            complaint stating claims under section 10(b) and Rule 10b–5 must
27          satisfy the dual pleading requirements of Federal Rule of Civil
            Procedure 9(b) and the PSLRA."  *Zucco Partners, LLC v. Digimarc*

28

> *Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (internal citation and quotations omitted).  [. . .]
>
> Additionally, this cause of action is subject to the more stringent pleading standard under the Private Securities Litigation Reforms Act of 1995 ("PSLRA") and thus must plead scienter with particularity.  *Zucco Partners*, 552 F.3d at 990-91.

(Doc. No. 42 at 11.)

In considering the first round of motions to dismiss, the court dismissed this claim for failing to satisfy the pleading standard under Rule 9(b).  (*Id.*)  Because of that, the court did not examine the further heightened pleading standard imposed under the PSLRA.  (*Id.*)  The court's order did, however, remind plaintiffs' that the PSLRA required that they "state with particularity facts giving rise to a **strong inference** that the defendant acted with the required state of mind." (*Id.* (quoting 15 U.S.C. § 78u-4(b)(2) (emphasis added)).)

"A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007).  Plaintiffs have included in their FAC new factual allegations addressing the timing of the falsity alleged— i.e., plaintiffs now aver that the statements in question were false at the time they were initially made and why they were false at that time.  (Doc. No. 44 at ¶ 149(a)–(k).)  Plaintiffs have also elaborated further the allegations of two sub-claims on which their securities fraud cause of action is based.  (*Id.* at ¶¶150–51.)  These elaborations specifically concern the bridge loan issue discussed in other sections of this order above and a loan to Mesa made by defendants Glover and Roderick that purportedly violated the terms of the second amended operating agreement.  (*Id.*) These factual elaborations are also the only two attempts made by plaintiffs to allege the scienter required for securities fraud cause of action.  *See Zucco Partners*, 553 F.3d at 990-91.  Because the other sub-claims do not even attempt to allege scienter as required, they will be dismissed with prejudice.

As to the two sub-claims for which plaintiffs offered further allegations, the sub-claims are nonetheless insufficient under the dual pleading standard of Rule 9(b) and the PSLRA.  First,

the allegations stated do not give rise to a strong inference that the defendants acted with the requisite state of mind.  Second, the court analyzed the bridge loan subclaim previously, and for all of the reasons noted in subsection (1) of this order above, plaintiffs have not clearly alleged a misrepresentation or omission that satisfies Rule 9(b).  Third, under Rule 10b-5, there must be a connection with the purchase or sale of a security.  The loan to Mesa by Glover and Roderick was made in January 2017, according to the allegations of plaintiffs' FAC.  (Doc. No. 44 at ¶ 151.)  This is well after January 2015–March 2015 or April 21, 2015, both of which are alleged by plaintiffs to be the time when the securities were sold.  (Doc. Nos. 44 at ¶ 123 ("On or about December 2014 through March 2015, Defendants, in Bakersfield, California, offered and sold to Plaintiffs 80% interest in Nominal Defendant Mesa Senior Living LLC for $6.3 million."); 61 at 13.)  While the Supreme Court has held that the deceptive practice need only touch the sale of a security, there is no clear path by which a loan made nearly two years after the sale of a security could be said to have touched the sale transaction.  *Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12–13 (1971) ("The crux of the present case is that [victim-seller] suffered an injury as a result of deceptive practices touching its sale of securities as an investor.").  For these reason, plaintiffs' sub-claims fail to allege the elements necessary to state a cognizable claim.

For all the above reasons, plaintiffs' seventh cause of action will also be dismissed with prejudice.

**F.     Cause of Action Eight:  Derivative Suit under Oregon Revised Statute § 63.801**

Plaintiffs' eighth cause of action alleges a claim under Oregon Revised Statute § 63.801, "Derivative proceedings."  (Doc. No. 44 at ¶¶ 157–62.)  This claim is asserted against defendants Glover, Roderick, Frontier Management, and nominal defendant Mesa.

As the court has previously explained:

> Federal Rule of Civil Procedure 23.1 "applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."  Fed. R. Civ. P. 23.1(a).   "To determine whether a complaint meets the pleading standard of Rule 23.1, the court must

26

1
2
3
4
5
6
7
8
9

look to the law of the state of the company's incorporation." *Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, No. 08-CV-376-BR, 2009 WL 1795574, at *2 (D. Or. June 23, 2009), *as amended* (June 24, 2009), *aff'd*, 436 F. App'x 792 (9th Cir. 2011). Under Oregon law, any member asserting a derivative claim "**must allege with particularity** the demand made, if any, to obtain action by the managers or the members who would otherwise have the authority to cause the limited liability company to sue in its own right, and either that the demand was refused or ignored or the reason why a demand was not made." Or. Rev. Stat. § 63.801(2) (emphasis added). Oregon Revised Statute § 63.801 "impos[es] pleading requirements similar to Fed. R. Civ. P. 23.1 on members seeking to initiate derivative proceedings on an LLC's behalf." *Green v. Blake*, 406 F. Supp. 3d 984, 993 (D. Kan. Aug. 12, 2019).

10   (Doc. No. 42 at 13–14.)

11   The court previously dismissed plaintiffs' sixth cause of action due to its failure to allege

12   with the required particularity the demand made of Glover, Roderick, and Frontier Management

13   to take action. (Doc. No. 42 at 13–15.) In plaintiffs' FAC, they now have partially quoted the

14   letter that they sent to defendants. (Doc. No. 44 at ¶ 159.) That letter "suggest[ed] mediation" in

15   order to avoid the filing of plaintiffs' lawsuit, and a draft copy of the then-complaint was included

16   with that correspondence. (*Id.* at ¶¶ 159–60.) That is the entirety of plaintiffs' demand in relation

17   to their derivative claim. (*Id.*) Plaintiffs now further aver in their FAC that defendants failed to

18   take action insofar as defendants declined to enter mediation. (*Id.*)

19   Plaintiffs' additions to its claims are insufficient to satisfy the pleading standard

20   applicable to this claim. The Court of Appeals of Oregon has found that in addition to those

21   requirements set forth on the face of § 63.801(2), a plaintiff seeking to bring a derivative cause of

22   action based on Oregon law must also allege wrongful conduct. *Bernards v. Summit Real Est.*

23   *Mgmt., Inc.*, 229 Or. App. 357, 363–64, 368 (2009). In *Bernards*, the appellate court further

24   concluded that "an allegation of facts sufficient to show that member defendants acted in bad

25   faith or that their actions constituted gross negligence, fraud, or willful or wanton misconduct is

26   also necessary." *Id.* at 363–64. This is due, in part, to the business judgment rule, which applies

27   to derivative claims. *Id.* at 364–66.

28   /////

27

In their FAC, plaintiffs do not state under the eighth cause of action what wrongful acts support their derivative action.  (Doc. No. 44 at ¶¶ 157–62.)  Instead, plaintiffs incorporate by reference the preceding 156 paragraphs—accepted practice under Federal Rule of Civil Procedure 10(c).  However, defendants Glover, Roderick, and Frontier Management contend that plaintiffs have not asserted *anywhere* in their complaint wrongful conduct by defendants that would support a derivative claim.  (Doc. Nos. 51-1 at 26–27; 67-1 at 21.)

In response to defendants' contention, plaintiffs stated that "[i]mproper actions were taken by Roderick and Frontier while Plaintiffs were members, such as impermissible loans to Glover and Roderick under the Second Amended Operating Agreement."  (Doc. No. 61 at 17.)  They further stated that "[t]he Eighth Cause of Action incorporates all the proceeding paragraphs pursuant to FRCP 10(c) (FAC ¶ 157) which allege Defendants bad faith, fraudulent, and/or grossly negligent actions which overcome the business judgment rule."  (Doc. No. 68 at 29.)

Plaintiffs' response in this regard is unpersuasive.  Defendants are challenging whether plaintiffs have alleged the requisite wrongful conduct, and it is not for the court to sift through the preceding 156 paragraphs (and more than 50 pages of incorporated documents) and decide which of plaintiffs' allegations they would put forward to support their derivative suit.  Further, plaintiffs' reference to "impermissible loans" in their opposition clearly does not support the claim without more detailed and specific allegations.  "[P]laintiffs [have] to allege ultimate facts from which member defendants' seriously wrongful conduct is *inferable,* not merely a possibility."  *Bernards*, 229 Or. App. at 368 (emphasis added).  Here, plaintiffs do not allege facts explaining how the loan harmed nominal defendant Mesa, even if it violated the second amended operating agreement's prohibition against incurring more debt (but seemingly did not violate a different provision permitting members to lend money to Mesa, according to plaintiffs' FAC).  (Doc. No. 44 at ¶ 93.)  Moreover, plaintiffs do not specify what "wrongs and injuries" Mesa has suffered at all, except to baldly state that Mesa was "damaged in an amount presently unknown, however, Plaintiffs are informed and believe said amount exceeds $6.5 million."  (Doc. No. 44 at ¶¶ 158, 161.)

/////

28

Additionally, plaintiffs' complaint does not comply with the clear provisions of Rule 23.1(b), which requires that a complaint be verified and that it:

> (1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;

> (2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and

> (3) state with particularity:

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

> (B) the reasons for not obtaining the action or not making the effort.

Plaintiffs' FAC is not verified, and it does not allege the required information.

For all of the above reasons, plaintiffs' cause of action eight will be dismissed with prejudice.

## G.     Cause of Action Nine:  Liability of Seller to Purchaser

Plaintiffs' ninth cause of action is titled "Joint and Several Liability Management Personal/Aiders and Abettors – Oregon Revised Statutes § 59.115" and is alleged against all defendants excluding nominal defendant Mesa.  (Doc. No. 44 at ¶¶ 163–65.)  The court previously dismissed this claim because it had dismissed the fourth cause of action and the two were intertwined.  (Doc. No. 42 at 15–16.)

The ninth cause of action of the FAC will now be dismissed for two reasons.  First, as discussed in § D above, § 59.115 applies only to offers to sell made in Oregon or offers to buy when the offer is both made and accepted in Oregon.  Or. Rev. Stat § 59.335(1).  Plaintiffs' FAC alleges that interests in Mesa were "offered and sold" in California.  (Doc. No. 44 at ¶ 134.)  Moreover, the statute is equally as inapplicable for aiding and abetting as it is for primary liability.

Accordingly, plaintiffs' ninth cause of action will also be dismissed with prejudice.

/////

29

1

**CONCLUSION**

2          For all of the reasons explained above, defendants' motions to dismiss (Doc. Nos. 51,

3    55, 57, 67) are granted, and plaintiffs' first amended complaint (Doc. No. 44) is dismissed with

4    prejudice.[10]  The Clerk of the Court is directed to assign a district judge to this case for purposes

5    of closure and then to close this case.

6

7    IT IS SO ORDERED.

8          Dated:   __**December 23, 2021**__          _____

9                                                       UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

_____

26   [10]  Under the circumstances described throughout this order, the court concludes that granting
     further leave to amend here would be futile.  *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir.
27   2012).  Plaintiffs were provided adequate notice of the potential deficiencies in their original
     complaint by the court prior order dismissing that complaint and have failed to correct, or in some
28   instances even address, those noted issues.

                                                    30